UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEBORAH CURRY,

                    Plaintiff,

     v.                                                    **DECISION AND ORDER**
                                                          03-CV-619S

FEDERAL EXPRESS CORPORATION,

                    Defendant.

## I. INTRODUCTION

In this action, Plaintiff Deborah Curry alleges that Defendant Federal Express Corporation unlawfully discriminated against her based on her sex and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the New York Human Rights Law. In addition, Plaintiff claims that she was subjected to a hostile work environment and retaliation for filing a discrimination complaint. Currently before this Court is Defendant's Motion for Summary Judgment.

## II. BACKGROUND

### A.     Factual Summary

The following facts are undisputed for purposes of this motion. Plaintiff started working for Federal Express ("Fed Ex") on December 10, 1997, as a temporary handler. (Def's State., ¶ 1). She was subsequently promoted to permanent part-time courier on June 29, 1998. (Def.'s State., ¶ 5). During all relevant times, her manager was John Farsworth. (Def.'s State., ¶ 7). Plaintiff continued as a part-time courier until she voluntarily resigned from Fed Ex on June 20, 2002. (Def.'s State., ¶¶ 8, 74-75).

Plaintiff claims that during her employment with Fed Ex, Jason Snell, a co-worker employed in a different work group, expressed comments of a sexual nature to her on a

pervasive basis.  (Def.'s State., ¶¶ 14, 15, 29).  Mr. Snell allegedly told Plaintiff two or three times over a number of months that if she needed someone to show her a good time, he was always available.  (Def.'s State., ¶ 16).  Thereafter, Mr. Snell commented to Plaintiff that she looked "fine" and "hot," and that she was too young to be a grandmother.  (Def.'s State., ¶¶ 18, 20, 21).  Two or three times when he made these comments, Mr. Snell put his arm around Plaintiff.  (Def.'s State., ¶ 25).

Plaintiff does not allege that any other employee made comments to her.  However, she claims that the male couriers would wrestle each other and grab each other's private parts, a behavior she thought was "childish."  (Def.'s State., ¶¶ 27, 31).  The male employees did not touch any of the female employees during these wrestling incidents.  (Def.'s State., ¶ 28).  Plaintiff never saw Mr. Snell engaging in any of this "horseplay," and she never saw him touch another male courier.  (Def.'s State., ¶¶ 33-34).

On December 7, 2001, after returning from her courier route at 8:30 p.m., Plaintiff was talking to her manager, John Farnsworth, and another employee, when Mr. Snell ran at her, threw his arms around her, picked her up off the floor and ran backwards with her about ten or fifteen feet.  (Def.'s State., ¶ 45).  This happened very fast, and they both fell, causing injuries to Plaintiff's head, neck and arms.  (Def.'s State., ¶¶ 47-48, 56).  Plaintiff cannot say that this was a sexual assault, and her resignation letter described it as a "tackle."  (Def.'s State., ¶¶ 54, 75).  Mr. Snell apologized and helped her up.  (Def.'s State., ¶ 53).  Because she was injured, her manager filled out a workers' compensation report.  (Def.'s State., ¶ 64).

Fed Ex has a Sexual Harassment policy, of which Plaintiff was fully aware.  (Def.'s State., ¶¶ 35-36).  Both the Guaranteed Fair Treatment/EEO Complaint Process ("GFTP")

and Sexual Harassment policies are contained in the Employee Handbook, which Plaintiff received.  (Def.'s State., ¶¶ 9-11).  The GFTP/EEO Complaint Process is also set forth on a plaque at the Fed Ex station.  (Def.'s State., ¶41).  When she was employed at Fed Ex, Plaintiff was given training on the Sexual Harassment policy.  (Def.'s State., ¶ 35).  Plaintiff knew she had a right to make a written complaint of sexual harassment through the GFTP.  (Def.'s State., ¶ 42).  However, she never made a written complaint to anyone at Fed Ex about sexual harassment while she was employed.  (Def.'s State., ¶ 37).  Plaintiff never filled out an employee information statement form regarding sexual harassment, nor did she complain to her matrix Human Resources representative.  (Def.'s State., ¶¶ 43-44).  Plaintiff never complained to her Senior Manager, Managing Director, or personnel representative  about her alleged sexual harassment (Def.'s State., ¶ 38), although she "believes" that she reported Mr. Snell to her managers Kelly Shapiro and Mr. Farnsworth.  (Def.'s State. , ¶¶ 17, 22).  She did not, however, avail herself of the Open Door policy to complain to higher management about sexual harassment.  (Def.'s State., ¶ 39).

Among the essential duties and functions of the Plaintiff's position as a courier, Plaintiff was required to lift packages up to 75 pounds, and maneuver packages of any greater weight with appropriate equipment and/or assistance from another person.  (Def.'s State., ¶ 66).  As of June 18, 2002, Plaintiff's doctor reported that she could not perform these duties.  (Def.'s State., ¶ 67).  From January 21, 2002, until March 25, 2002, Plaintiff participated in the Temporary Return to Work ("TRW") program.  (Def.'s State., ¶¶ 69, 72).  The TRW policy provides placement for employees who are temporarily unable to perform the full range of their regular job duties, but who have been released by their physician to work in a limited capacity.  (Def.'s State., ¶ 71).  A temporary placement cannot exceed 90

calendar days.  (Def.'s State., ¶ 71).  From the time of Plaintiff's injury on December 7, 2001, until she resigned on June 20, 2002, she could not meet the essential lifting requirement of her position.  (Def.'s State., ¶ 79).

Human Capital Management Program Manager William Mayo ("Mayo") advised Plaintiff that she was going to be returned from TRW to basic Workers' Compensation leave.  (Def.'s State., ¶ 81).  Pursuant to Fed Ex's Medical Leave of Absence Policy, Plaintiff would have a maximum of 365 Workers' Compensation days of leave.  (Def.'s State., ¶ 84).  Mayo advised Plaintiff that if she was unable to return to work within 90 calendar days, Fed Ex might need to replace her.  (Def.'s State., ¶ 85).  If she had been given permanent restrictions and limitations by her doctor, she would have been given the right to submit unlimited Job Change Applications ("JCAs") for another position, or she would have been terminated and given a lump sum benefit payment at the end of 90 days, provided no position was offered to or accepted by her, and she had not yet returned to work.  (Def.'s State., ¶ 88).

Plaintiff inquired about a Customer Service Agent position, but there is no evidence that she ever applied for one.  (Def.'s State., ¶ 89).  In any event, Plaintiff could not perform the essential functions of the Cutsomer Service Agent position, which also requires the ability to lift 75 pounds.  (Def.'s State., ¶ 92).  Plaintiff admits that Fed Ex has no permanent light duty positions.  (Def.'s State., ¶ 68).  Plaintiff resigned before she was assigned permanent restrictions and before Fed Ex could determine what, if any, positions she could perform with or without an accommodation.  (Def.'s State., ¶¶ 97-98).  While she was still employed at Fed Ex, Plaintiff applied for and was offered a position at Wilson Greatbatch.  (Def.'s State., ¶¶ 75, 77-78).  She began working at Wilson GreatBatch on June 24, 2002, just four days after she resigned her position at Fed Ex.  (Def.'s State., ¶

4

77).

Plaintiff filed a charge of discrimination with the New York State Division of Human Rights on October 24, 2002, which was dually filed with the EEOC.  (DeLuca Aff., Exh. V). Therein, Plaintiff alleged that she was discriminated against based on sex and "retaliated against after sustaining [an] injury."  (DeLuca Aff., Exh. V).  Plaintiff claimed that in February 2002, Mr. Snell was put on light duty next to her at the front counter, even though she had requested that they be kept separate.  (DeLuca Aff., Exh. V).  Plaintiff testified that Defendant removed Mr. Snell as soon as she complained, and that she had no further contact with him.  (Def.'s State., ¶¶ 99-100).  Plaintiff also testified that it is not her claim that Defendant retaliated against her because of any complaints about sex discrimination or harassment.  (Def.'s State., ¶ 101).

## B.   Procedural History

Plaintiff filed this action on June 18, 2003, in the State of New York Supreme Court, County of Erie.  On August 14, 2003, Defendant removed this case to the United States District Court for the Western District of New York.  On May 20, 2005, Defendant filed the instant Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  For the following reasons, Defendant's Motion is granted with respect to Plaintiff's federal claims.

## III. DISCUSSION

## A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

---

[1]In support of its Motion for Summary Judgment, Defendant filed a Memorandum of Law, a Reply Memorandum of Law, a Rule 56 Statement, an Appendix of Unreported Cases, an Attorney Affidavit with attached exhibits and the Affidavit of Coann Sims Ressler with attached exhibits.  In opposition to Defendant's motion, Plaintiff filed a Memorandum of Law and a Rule 56 Statement.

is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." Id.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the Second Circuit has cautioned district courts to use care when deciding summary judgment motions because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d

Cir. 1994)).  However, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  Indeed, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation."  Id.

**B.    Defendant's Motion for Summary Judgment**

Plaintiff asserts five causes of action.  In her first and second causes of action, Plaintiff alleges discrimination based on disability under the ADA and New York Human Rights Law.  In her third cause of action, she asserts that she was retaliated against for making complaints of disability discrimination.  In her fourth and fifth causes of action, she alleges sexual discrimination and harassment under Title VII and the New York Human Rights Law.

Defendant moves for summary judgment on all of Plaintiff's claims.  Specifically, Defendant first argues that Plaintiff's sexual discrimination and harassment claims under Title VII are time-barred, or in the alternative, that they fail as a matter of law.  Second, Defendant argues that insofar as the Complaint asserts a claim of constructive discharge, Plaintiff has failed to exhaust her administrative remedies with respect to such a claim. Further, Defendant argues that Plaintiff's claim of disability discrimination is unexhausted, and in any case, that Plaintiff is not disabled within the meaning of the ADA.  Defendant next argues that Plaintiff has failed to present any evidence of retaliation.  Finally, Defendant contends that as there is no liability under federal law on any of Plaintiff's claims, her New York Human Rights Law claims should be dismissed as well.  This Court address each argument in turn.

### 1.      Plaintiff's Title VII Claims Are Time-Barred

Title VII of the Civil Rights Act of 1964 provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).

To maintain an action under Title VII, a plaintiff must ordinarily file a timely charge with the EEOC, receive from that agency a right to sue letter, and file an action within 90 days of receipt of that letter.  Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994).  Because New York is a state with a fair employment agency, a charge of discrimination must be filed with the EEOC or the New York State Department of Human Rights within 300 days of the alleged discrimination.  42 U.S.C. §2000e-5(e); Harris v. City of New York, 186 F.3d 243, 247 n.2 (2d Cir. 1999).

"The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action."  Van Zant, 80 F.3d at 713 (citing Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992)).  The 300 day filing requirement "functions as a statute of limitations."  Quinn v. Green Tea Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).  The 300 day statute of limitations is strictly construed in this Circuit.  See, e.g., Trenchfield v. DuPont Photomasks, Inc., No. 96 CIV. 1135 (AGS), 1997 WL 53238, at *5-6 (S.D.N.Y. Feb. 7, 1997) (dismissing as untimely plaintiff's Title VII claims which were filed with the EEOC 338 days after the alleged discriminatory employment practice); Van Zant v. KLM Royal Dutch Airlines, 870 F. Supp. 572, 575 (S.D.N.Y. 1994) (dismissing as time-barred the plaintiff's sexual harassment and retaliation claims where the last alleged discriminatory act occurred 315 days before EEOC filing).  Moreover, the United

States Supreme Court recently reiterated its statement that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'"  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108, 122, S. Ct. 2061, 2070, 153 L. Ed. 2d 106 (2002) (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S. Ct. 2486, 2497, 65 L. Ed. 2d 532 (1980)).

Plaintiff filed her charge of discrimination with the New York State Division of Human Rights on October 24, 2002, and dually filed her claim with the EEOC.  (DeLuca Aff., Exh. V).  Among other things, Plaintiff's charge alleges sexual harassment and hostile work environment based on her male co-workers' horseplay, as well as Mr. Snell's comments, his open physical contact with a female co-worker, and the events of December 7, 2001, when Mr. Snell picked her up, fell on the floor and injured her.  Plaintiff makes no claim of sexual discrimination or harassment after December 7, 2001.[2]

Applying the 300 day statute of limitations, it is clear that Plaintiff's claims of hostile work environment and sexual harassment are time-barred.  The record reflects that all of the events upon which her claims of sexual discrimination are based occurred on or before December 7, 2001 --  321 days before she filed her charge.  Accordingly, this Court finds that Plaintiff's claims relating to hostile work environment or sexual discrimination are  time-barred.  See Miller v. New York City Health & Hosp. Corp., No. 00 Civ. 140, 2004 WL 1907310, at *3 (S.D.N.Y. Aug. 25, 2004) (holding that "[a]n incident that was not charged to the EEOC or DHR within 300 days of its occurrence is time-barred.").[3]

---

[2]     In her charge, Plaintiff does allege that that Mr. Snell was briefly stationed beside her in February 2002, when she was on TRW.  However, there is no evidence that Mr. Snell made comments of a sexual nature to Plaintiff at that time.  Moreover, Plaintiff testified that Mr. Snell was removed immediately after she complained.  (Def's State., ¶ 99).

[3]Even if Plaintiff's claims were timely, this Court would still find that Defendant was entitled to summary judgment.  Mr. Snell's alleged comments and conduct were not sufficiently severe or pervasive to establish a prima facie case of sexual harassment. See Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (A Title VII plaintiff "must show that the workplace was so severely permeated with discriminatory

**2.      Plaintiff's Claim of Constructive Discharge is Unexhausted**

It is well-established that before commencing an action under Title VII, a plaintiff must exhaust her administrative remedies by first presenting her claims to the EEOC. Bailey v. Colgate-Palmolive Co., No. 99 Civ. 3228, 2003 WL 21108325, at *12 (S.D.N.Y. May 14, 2003).  Failure to do so defeats the purpose of Title VII's statutory notice provision, which is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance."  Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 26 (2d Cir. 1985); Burnett v. ESL Fed. Credit Union, 198 F. Supp. 2d 307, 314-15 (W.D.N.Y. 2002). Consequently, courts routinely dismiss unexhausted Title VII discrimination claims.  Bailey, 2003 WL 21108325, at *12 (citing cases).[4]

In her Complaint, Plaintiff claims that she had to resign her job with Fed Ex as a result of Defendant's alleged discriminatory conduct, or in other words, that she was constructively discharged.  It is clear, however, that Plaintiff did not present her constructive discharge claim to the EEOC.  In her charge of discrimination, Plaintiff does not allege that she was forced to leave her employment with Fed Ex because Defendant was

_____

intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."). Further, Defendant would also be entitled to summary judgment with respect to Plaintiff's discrimination claims.  To state a *prima facie* case of sex discrimination, a plaintiff must show that he or she suffered an adverse employment action that occurred under circumstances giving rise to an inference of discrimination based on gender.  Visco v. Cmty. Health Plan, 957 F. Supp. 381, 385 (N.D.N.Y. 1997).  An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). Plaintiff does not allege that she was subjected to an adverse employment action.

[4]The "filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982).  The Second Circuit has held that "'as a general matter, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement.'"  Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000) (quoting Gibson v. West, 201 F.3d 990, 994 (7th Cir. 2000)); see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 n.5 (2d Cir. 2000); Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist., 180 F.3d 468, 474 (2d Cir. 1999).  Thus, the requirement can be waived by the litigants or the court. Zippes, 455 U.S. at 393; Pietras, 180 F.3d at 474.  On the other hand, a defendant has the right to insist that Plaintiff exhaust her administrative remedies, as Fed Ex has done in this case.  See Francis, 235 F.3d at 768 (noting that defendants are entitled to insist that plaintiffs comply with the exhaustion requirements).

discriminating against her.  In fact, Plaintiff does not even allege that she resigned her employment with Fed Ex, despite the fact that over four months had elapsed between the date she resigned, June 20, 2002, and the date she filed her charge of discrimination, October 24, 2002.  Therefore, Plaintiff has failed to exhaust her administrative remedies with respect to her constructive discharge claim.  Under the circumstances, her claim must be dismissed.[5]

### 3.      Plaintiff Was Not Disabled Within the Meaning of the ADA

### a.      Exhaustion Under the ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).  Before commencing suit under the ADA, a plaintiff must exhaust his or her administrative remedies by filing a timely charge with the EEOC.  See 42 U.S.C. § 12117 (adopting the administrative exhaustion requirement of Title VII codified at 42 U.S.C. § 2000e-5, for claims under Title I of the ADA).

Defendant argues that Plaintiff did not complain of disability discrimination in her

---

[5] Under some circumstances, courts may entertain claims that are "reasonably related" to, but not expressly alleged in the underlying administrative charge.  See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded by statute on other grounds as stated in, Hawkins v. 1115 Legal Servs. Care, 163 F.3d 684, 693 (2d Cir. 1998).  In Butts, the Second Circuit discussed three situations where unexhausted claims may be "reasonably related" to properly presented claims: (1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) where the "claim is one alleging retaliation by an employer against an employee for filing an EEOC charge," or (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  Butts, 990 F.2d at 1402-03 (quotations and citations omitted).  Plaintiff does not argue that her unexhausted claim of constructive discharge is reasonably related to those alleged in her charge.

EEOC charge, and therefore, that her unexhausted claims must be dismissed.  A review of the charge reveals that while Plaintiff checked the boxes related to sex and retaliation, she left the disability box blank.  While Plaintiff's charge does not allege that she was disabled, she does refer therein to her injury and the fact that another employee was "accommodated," while she was not.  Regardless of whether Plaintiff exhausted her ADA claims, this Court finds Defendant is entitled to summary judgment because Plaintiff has failed to make out a *prima facie* case of discrimination under the ADA.  Specifically, there is no evidence from which a reasonable jury could conclude that Plaintiff was disabled within the meaning of the ADA.

**b.      The ADA's Burden Shifting Framework**

Claims brought under the ADA are analyzed under the same framework as claims brought under Title VII.  See Reg'l Econ. Cmty. Action Prog., Inc. v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir. 2002) (noting that plaintiffs may proceed under any or all of three theories under the ADA: disparate treatment, disparate impact, and failure to make reasonable accommodation).  In cases such as this, where there is no overt evidence of discriminatory conduct, courts employ the three-step burden-shifting framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-825, 36 L. Ed. 2d 668 (1973).  Initially, the plaintiff must establish a *prima facie* case of discrimination.  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing McDonnell Douglas, 411 U.S. at 802).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action.  Weinstock, 224 F.3d at 42 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.

Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981)).   If the defendant makes this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture."  Weinstock, 224 F.3d at 42 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993)).

To avoid summary judgment at that point, the plaintiff bears the burden of producing "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."  Weinstock, 224 F.3d at 42.  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."  Id.  However, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination."  Id. (quoting St. Mary's, 509 U.S. at 519).

**c.     Plaintiff Has Failed to Establish A Prima Facie Case of Disability Discrimination**

To establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must submit evidence that:  (1) the defendant is covered by the ADA;[6] (2) the plaintiff is disabled within the meaning of the ADA; (3) she can perform the essential functions of her job with or without a reasonable accommodation; and (4) she was subject to an adverse employment action because of her disability.  See Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998) (citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998)).  Defendant argues that Plaintiff was not disabled within the meaning of the ADA, because she was not substantially limited in any major life activity.

---

[6]A covered entity is "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).  "The term employer means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  29 C.F.R. § 1630.2(e)(1).

Disability determinations under the ADA are made on a case-by-case basis. <u>Reeves</u>, 140 F.3d at 151-52 (citing cases). Under the ADA, a disability is defined as:

> (A)   a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B)   a record of such an impairment; or
>
> (C)   being regarded as having such an impairment.

42 U.S.C. § 12102(2).

The United States Supreme Court has articulated a three-step approach for determining whether a plaintiff has a "disability" based on a physical or mental impairment. <u>See</u> <u>Bragdon v. Abbott</u>, 524 U.S. 624, 631, 118 S. Ct. 2196, 2202, 141 L. Ed. 2d 540 (1998); <u>Colwell v. Suffolk County Police Dep't</u>, 158 F.3d 635, 641 (2d Cir. 1998). First, the court must determine whether the plaintiff suffers from a qualifying physical or mental impairment. <u>Bragdon</u>, 524 U.S. at 631. Second, the court must identify the activity that plaintiff claims is impaired, and then determine whether that activity constitutes a "major life activity." <u>Id.</u> Third, the court must determine whether the plaintiff's impairment "substantially limited" the identified major life activity. <u>Id.</u>

The EEOC has promulgated regulations interpreting the ADA, which define "physical impairment" as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).[7]

---

[7]This Court notes that there are two sources of guidance for interpreting the provisions of the ADA in the context of employment discrimination: the EEOC regulations cited herein and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 706(8)(b), and its accompanying regulations. <u>See</u> <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 193, 122 S. Ct. 681, 689, 151 L. Ed. 2d 615 (2002); <u>see</u> <u>also</u> <u>Sutton v. United</u>

Plaintiff's neck and back injuries qualify as "physical impairments" within the meaning of the ADA since they are "physiological disorder[s]" affecting the "musculoskeletal" system.  29 C.F.R. § 1630.2(h)(1); Trobia v. Henderson, 315 F. Supp. 2d 322, 327 (W.D.N.Y. 2004) (back); Thompson v. New York City Dep't of Prob., No. 03 Civ. 4182, 2003 WL 22953165, at *3 (S.D.N.Y. Dec. 12, 2003) (neck and back).

This Court must now identify the activity that Plaintiff claims is impaired and determine whether it constitutes a "major life activity." Bragdon, 524 U.S. at 631.  "Major life activity means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).  This list is illustrative not exhaustive.  Bragdon, 524 U.S. at 639.  In the Second Circuit, sleeping, sitting, standing lifting and reaching have also been found to be major life activities.  See Colwell, 158 F.3d at 642 (citing Ryan, 135 F.3d at 870).  The relevant inquiry is whether the identified activity is a significant one within the meaning of the ADA, not whether it is of significance or importance to a particular individual.  Id. at 642.

Here, Plaintiff alleges that her lifting restriction prevented her from performing the essential duties of her job as a courier.  Work is specifically included in the regulations as an activity fitting the definition of a "major life activity" for ADA purposes.[8]  See 29 C.F.R. § 1630.2(i).

---

Airlines, Inc., 527 U.S. 471, 477-81, 119 S. Ct. 2139, 2144-147, 144 L. Ed. 2d 450 (1999) (discussing interpretive regulations for the ADA).

[8]This Court notes that in Sutton v. United Airlines, Inc., the Supreme Court expressed concern over whether one's ability to work should be considered a "major life activity" under the ADA.  527 U.S. 471, 491-92, 119 S. Ct. 2139, 2151, 144 L. Ed. 2d 450 (1999); see also Santos v. City of New York, No. 01 CIV. 120, 2001 WL 1568813, at *5 (S.D.N.Y. Dec. 7, 2001) (noting Supreme Court's concern).  It noted that limitations on working should only be considered if a plaintiff is limited in no other major life activities.  Id. (citing 29 C.F.R. pt. 1630, App. § 1630.2(j)).  That is the case here.

Finally, this Court must determine whether Plaintiff's impairment "substantially limited" her ability to work.  Id.  Under the regulations, the term "substantially limits" means:

(i)     Unable to perform a major life activity that the average person in the general population can perform; or

(ii)    Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j).

In the context of an alleged inability to work, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723 (2d Cir. 1994) (citing Jasany v. United States Postal Serv., 755 F.2d 1244, 1249 n.3 (6th Cir. 1985)).  The regulations regarding the inability to work explicitly provide that "[t]he term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(i).  "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working . . . ."  Id.; Dean v. Westchester County P.R.C., 309 F. Supp. 2d 587, 595  (S.D.N.Y. 2004).   Upon reviewing the record, this Court finds that Plaintiff has failed to set forth admissible evidence from which a reasonable trier of fact could find that her ability to work was substantially limited within the meaning of the ADA.  See Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) (stating that "only admissible evidence need be considered by a trial court in ruling on a motion for summary judgment").  Plaintiff has failed to submit or reference any evidence regarding her alleged disability in opposition to Defendant's motion for summary judgment.

16

It is undisputed that Plaintiff had a lifting restriction which prohibited her from performing her duties as a courier.  However, this restriction, in and of itself, is insufficient to create a genuine issue as to whether Plaintiff was disabled.  Numerous courts in this Circuit have held that, as a matter of law, a lifting restriction does not constitute a disability under the ADA.  See Huskins v. Pepsi Cola of Odgensburg Bottlers, Inc., 180 F. Supp. 2d 347, 353 (N.D.N.Y. 2001); Varre v. City of Syracuse, No. 96-CV-1792, 2000 WL 270966, at *5 (N.D.N.Y. Mar. 6, 2000); Strassberg v. Hilton Hotels Corp., No. 95 CIV6235(LLS), 1997 WL 531314, at *2 (S.D.N.Y. Aug. 28, 1997).

The record does contain letters from various doctors regarding Plaintiff's range of motion and her discomfort, which were submitted by Defendant.  The law is clear that doctors' letters are "inadmissible hearsay and may not properly be considered."  Burgos v. City of Rochester, No. 99 Civ. 6480, 2003 WL 22956907, at *3 (W.D.N.Y. Mar. 31, 2003); see also Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 391 (S.D.N.Y. 1998) (granting summary judgment in an ADA case where the only medical evidence relied upon were inadmissible hearsay doctor letters).  None of these letters contain medical records, affidavits, or sworn testimony, which substantiate Plaintiff's claim that she suffered from a substantially limiting impairment.  See Burgos, 2003 WL 22956907, at *3.[9]  Plaintiff's mere allegation that she was "disabled," without supporting medical evidence, is insufficient to create a genuine issue as to whether she was substantially limited in any major life activity.  See id.; Weltz v. City of New York, No. 99 Civ. 3932, 2004 WL 1907309, at *4 (S.D.N.Y. Aug. 25, 2004) (citing Johnson v. St. Clare's Hosp. & Health Ctr., No. 96 Civ.

---

[9]Even if the letters were admissible, they belie any claim that Plaintiff was restricted from a broad range of jobs by her injury.  For example, Dr. Daniel Marsh's letter dated June 3, 2002, states "[r]egarding work, [Plaintiff] has a temporary partial moderate disability for her particular job as a Federal Express driver, being required to lift 70 pounds, however for other types of work she has no disability."  (Ressler Aff., Ex. L).

1425, 1998 WL 213203, at *8 (S.D.N.Y. 1998)).   Accordingly, this Court finds that no reasonable jury could conclude that Plaintiff was disabled under the ADA.

**d.   Plaintiff Cannot Show that Defendant Regarded Her as Being Disabled**

A plaintiff who is not actually disabled can still establish that she was disabled under the ADA if she sets forth evidence from which it could reasonably be concluded that Defendant regarded her as suffering from an impairment that qualifies as a disability under the ADA.   See 42 U.S.C. § 12102(2)(C); Weltz, 2004 WL 1907309, at *6.   The term "is regarded as having such an impairment" means:

> (1)   Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2)   Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3)   Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

The Second Circuit has held that a plaintiff must do more than show that her employer regarded her as "somehow disabled; rather, the plaintiff must show that the employer regarded her as disabled *within the meaning of the ADA*."   Colwell, 158 F.3d at 646 (emphasis in original); see also Francis v. City of Meriden, 129 F.3d 281, 285-86 (2d Cir. 1997). "'[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.'"   Reeves, 140 F.3d at 153 (quoting Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)).   "The plaintiff is 'required

to adduce evidence' that the employer regarded [her] 'as having an impairment that substantially limited a major life activity.'" Weltz, 2004 WL 1907309, at *6 (quoting Colwell, 158 F.3d at 646). In this context, whether the plaintiff is actually disabled under the ADA is irrelevant, it is the employer's perception that counts. See Colwell, 158 F.3d at 646.

Plaintiff does not cite to any evidence that Defendant regarded her as disabled within the meaning of the ADA.[10] The record reflects that Defendant knew that Plaintiff was unable to perform her job as a courier because of her lifting restriction. "Simply because a plaintiff is viewed by [her] employer as being unable to work in a specific job does not mean that the employer regards that employee as being substantially limited in the major life activity of working as is required for the stating of a claim under the ADA." Covelli v. National Fuel Gas Distrib. Corp., No. 99-CV-500E(M), 2001 WL 1823584, at *6 (W.D.N.Y. Dec. 6, 2001) (citing Daley v. Koch, 892 F.2d 212, 215 (2d Cir. 1989)). Accordingly, this Court finds that no reasonable jury could conclude that Defendant regarded Plaintiff as being disabled under the ADA. Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA claims.

## 4.    Retaliation

Title VII makes it unlawful for an employer to retaliate against employees who participate in protected activities, such as filing a discrimination complaint. 42 U.S.C. § 2000e-3(a). As with her discrimination claims, Plaintiff must initially establish a *prima facie* case of retaliation. Specifically, she must show that: (i) she participated in a protected

---

[10]The law is clear that it is not this Court's duty or function to search the record for such evidence. See Amnesty Am. v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002) ("[Rule 56] does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); Smith v. Ward Leonard Elec. Co., No. 00 Civ. 3703, 2004 WL 1661098, at *3 n.2 (S.D.N.Y. July 23, 2004) ("It is the job of [the party's] counsel, not the Court, to identify evidence sufficient to avoid summary judgment.").

activity known to the defendant; (ii) she suffered an adverse employment action; and (iii) a causal connection existed between the protected activity and the adverse employment action. Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir. 1999).

By her own admission, Plaintiff never filed a formal complaint regarding sex discrimination, sexual harassment, or retaliation.  Plaintiff alleges that William Mayo, her HCMP Manager, "retaliated" against her by taking her out of the Temporary Return to Work program and placing her on Workers' Compensation Leave of Absence.  However, Plaintiff has failed to demonstrate that Mayo took her off of light duty because she complained of discrimination or engaged in some other protected activity.  Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2d Cir. 1980) (holding that a plaintiff must establish that the retaliator knew of the protected activity to state a claim of retaliation under Title VII).  On the record before this Court, Plaintiff did not engage in any protected activity until she filed her charge with the EEOC on October 24, 2002 – several months after she resigned her position at Fed Ex.

Plaintiff has also failed to show a temporal connection between her alleged complaints and her resignation.  The record reflects that six months elapsed between the time Mr. Snell tackled her on December 7, 2001, and the date of her resignation on June 20, 2002.  Moreover, almost three months passed between the date she was taken off of light duty - - March 25, 2002 - - and her resignation in June.  Because Plaintiff has failed to establish a temporal connection, her *prima facie* case of retaliation fails.  See Moldonado v. Metra, 743 F. Supp. 563, 568 (N.D. Ill. 1990) (holding that a five month gap between protected activity and discharge was too lengthy to establish any causal

connection); see also Wrenn v. Ledbetter, 697 F. Supp. 483, 486 (N.D. Ga. 1988) (holding that the fact that an adverse action follows a plaintiff's participation in a protected activity, without more, is insufficient to establish the causal connection required to state a claim for retaliation).   Plaintiff's mere belief that the alleged adverse actions were based on retaliatory motives is not sufficient to establish a claim for retaliation.  See Cruz v. Triangle Affiliates, 571 F. Supp. 1218, 1225 (E.D.N.Y. 1983).  Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### 5.    New York State Human Rights Law Claims

The United States Supreme Court has instructed that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of any federal claim.  See Carnegie-Mellon Univ. v.  Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims").   Because no federal claims remain in this case, this Court need not retain jurisdiction over Plaintiff's remaining claims, which arise under the New York Human Rights law.  Rocco v. N.Y.S. Teamsters Conference Pension & Ret. Fund, 281 F.3d 62, 72 (2d Cir. 2002).

This Court notes that Plaintiff's failure to file her EEOC claim within 300 days of the alleged sexual discrimination, while fatal to her Title VII claim, does not preclude her  state law claim.  The New York Human Rights Law only requires that a claim be brought within three years of the alleged discriminatory act or acts.  N.Y. C.P.L.R. § 214(2); Van Zant, 80 F.3d at 714 (2d Cir. 1996).  Unlike Title VII, the Human Rights Law does not include an

administrative exhaustion requirement.  Crespo v. New York City Transit Auth., No. 01-CV-0671, 2002 WL 398805, at *10 (E.D.N.Y. Jan. 7, 2002); see N.Y. EXEC. L. § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . .").

In addition, Plaintiff's failure to establish that she suffers from a disability under the ADA does not foreclose her state law claims under the New York Human Rights  Law.  The definition of disability under the New York Human Rights Law is broader than the definition of disability under the ADA.  Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 316 (S.D.N.Y. 2003).  Moreover, the Second Circuit has explicitly stated that:

> We think that in the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by the New York state and municipal law is a question best left to the courts of the State of New York . . . . Indeed, we conclude that the state-law claims should be dismissed so that the state courts can, if so called upon, decide for themselves whatever questions of state law this case may present.

Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001); see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."); Cole v. Uni-Marts, Inc., 88 F. Supp. 2d 67, 74 n.4 (W.D.N.Y. 2000) (noting that the Second Circuit's preference is for the district court to decline to exercise jurisdiction over state law disability claims when the federal ADA clams have been dismissed on summary judgment).

"Where a claim originally reached the federal forum by removal from a state court, [a] district court has the discretion to dismiss the claim without prejudice or remand it to the state court."  Baylis v. Marriott Corp., 843 F.2d 658, 665 (2d Cir. 1988) (citing Carnegie-

Mellon Univer, 484 U.S. at 350).  Consistent with the foregoing, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and will instead remand them to state court.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that Defendant is entitled to summary judgment on Plaintiff's Title VII and ADA claims.  Defendant's motion seeking such relief is therefore granted.  Further, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  Those claims are remanded to state court.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 21) is GRANTED as to Plaintiff's federal claims.

FURTHER, that Plaintiff's state law claims are remanded to New York State Supreme Court, County of Erie.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.


Dated:  March 27, 2006
            Buffalo, New York

                                                        /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge